Case for the day is William Heath Hornady, Christopher Miller, et al. v. Outokumpu Stainless USA, LLC. The case number is 22-13691. Ms. Gatlin, I see that you have reserved seven minutes for rebuttal, and you may proceed when you are ready. May it please the Court. The $13 million default sanction against Outokumpu was entered after the District Court became outraged at OTK's prior counsel when it came to light that counsel had made actual misrepresentations directly to the District Judge about ADP's response to his opinion that the court ordered OTK to serve on ADP. OTK's former counsel's conduct was exposed on March 12, 2021, and caused a massive shift against OTK, resulting in the vitriolic order and excessive sanctions that we appeal here today. We ask this Court to reverse and remand the case for trial on the merits because the lower court erred as a matter of law and abused its discretion. When I read your briefs, it seemed rather defensive of the behavior of the prior counsel and the prior behavior of the company. Are you all defending what happened and saying that nothing wrong happened, or are you saying it is a new day and we should be able to move forward? Your Honor, we are certainly not saying that nothing wrong happened. OTK's prior counsel, it is clear, made misrepresentations to ADP, its other client, that it was representing unbeknownst to OTK, and made misrepresentations directly to the District Judge, which infuriated him, and reasonably so. At the same time, OTK's counsel was making misrepresentations to OTK, and OTK was being kept in the dark. So we certainly do not defend that conduct, and I am sorry if the brief seemed to insinuate that. But we have a District Court order that did look into whether this misconduct was only on the part of the former counsel or on the part of OTK, and made findings on that, and we are dealing with an abuse of discretion standard. So, I mean, the District Court considered this issue of who the sanctions were going to go against, and decided they were going to go against their client. How do we get out, how do you avoid the abuse of discretion standard here? Yes, Your Honor. There is a 96-page order that is very detailed. But I think, Your Honor, this case is one that you need to look at along the lines of the Chudasama case decided by this Court. The findings of bad faith against the client, OTK, are not supported by the court found in Chudasama. After this event, with the lawyer being found to have made misrepresentations, the courts was, does not seem to have been objective as to the client, OTK. OTK requested after its client was removed from the case, and they had no representation at all until they, you know, got another lawyer, other lawyers in. We then came in and asked to be presented evidence of OTK's conduct, what they were aware of, and what they had done, and that request was denied. And then, when we moved on reconsideration and presented our evidence, the court refused to hear it. So, on that, OTK was never heard as to its own conduct. And the underlying findings of bad faith against OTK are not supported. I would ask this court to look at the finding that OTK acted in bad faith by not producing its payroll records. That finding is not supported by the record. Throughout this record, there is evidence where even, Littler brought in another lawyer after this lawyer was stricken, and he came in and showed to the court that what the real issue was, was that the records were offered in PDF format, which was the native format that they were stored in, and the plaintiffs did not want those. If you look at the plaintiff's brief on page 12 of the red brief, this is the real crux of the issue in this case, that the plaintiff throughout this litigation took the position that the payroll records in PDF format were have to be manually retyped. And so, this entire issue of trying to get the documents in Excel came about because the plaintiffs did not want to accept the payroll records in the format that they were natively stored in. Isn't that a little bit of a red herring, though? Because it seemed like a lot of the misrepresentations were as to what ADP could or couldn't do, and then the district court found out that, in fact, ADP was capable of producing what, if anybody had ever spoken to ADP, ADP was ready, willing, and able to get documents. Well, the reason I don't think it is a red herring is you're exactly right about what happened with ADP, and we would say that that is on OTK's prior counsel, and that the evidence that OTK submitted as to what its involvement in that should have been considered because those affidavits and the attached emails show that OTK was also being told that the information could not be obtained from ADP. But OTK is a sophisticated, large company. This is not some mom-and-pop shop being kind of led around by the nose by its evil lawyers, and we've taken the sophistication of the client into account in other sanctions cases. Why wouldn't that be relevant here? I think it is relevant. ADP is the largest payroll processor in the country. Littler is probably one of the largest employment firms in the country. ADP was also being misled by Littler. But the OTK is also a very sophisticated company, is my point. Exactly, but they were being misled by their counsel, and ADP pointed that out to the district court. It's in the record. It's a very unfortunate thing, but it happened, and the record is clear on that. And OTK, as the client, was entitled to be heard as to what it was being told. Sophisticated or not, we're talking about individuals, and the individuals who were communicating with the lawyers were being told false information. I want to make sure that you get to one of the issues that we're talking about here today. You are arguing that the district court on the motion for reconsideration was proceeding under Rule 54B, and you're arguing for 55C, and I guess I'm having trouble figuring out why you are in 55 world. This is not a situation where a party has not appeared or not filed a response of pleading, and then default has been entered. We're in motion for reconsideration land, so tell me why we need to be in 54 world. Well, Your Honor, a default was entered, and the grounds for reconsideration of a default are good cause. Was it a default or a default judgment? Initially, he announced that he would enter a default, and he ultimately entered a default judgment. So if you go to Rule 60, you look at any just reason. To me, regardless of which of those standards you look at, you're looking at a good cause or a just reason. Neither of those bar the court from looking at OTK's evidence of what actually happened that the court had not been made aware of because the prior counsel was conflicted. And even if you were to go on and say, okay, I'm going to go with a reconsideration standard where you can only review new evidence, it's completely unreasonable for the court to have said that they're not going to look at OTK's evidence because the prior counsel did not present it. But that's not what 54B says, and I don't think that that's what the district court said. It certainly cited to that they could — the court — you could point to newly available evidence. But in looking at the court orders, this is — 54B gives the district court wide discretion to reconsider. And so I worry that you might be arguing for 55C when perhaps 54B serves your purpose, and maybe you're arguing over the — whether the district court abused its discretion in applying it. But the district court says in order to convince the court to alter its decisions, the defendants must set forth facts or newly available evidence, either of which could indicate the need to correct clear error or manifest injustice. That's correct, Your Honor. But the court went on and said that they would not consider the affidavit submitted by the employees with the e-mails showing what they had been told about the ADP production. And that's what the court did in its discretion. That's what the court did, applying the reconsideration standard instead of the either just reason under Roche or the good cause standard. Let's say that the appropriate standard was not what the district court applied, but it could be either good cause or just reason or even just plenary authority. What under any of those standards obligates the court to look at that evidence as opposed to allows the court to look at that evidence? Well, Your Honor, under an abusive discretion standard, if you want to look at it that way, with the court being aware that this counsel had made misrepresentations to the court and to ADP, and having — seeing these affidavits where they've made representations to — misrepresentations to ODK, we would argue that it's an abusive discretion not to look at that evidence. But why is what I'm saying. Of course, that's your perspective. But why did the court — why was the court obligated to look at that evidence? Because, Your Honor, if they're using the default procedure and we're asking for relief from the default, I mean, the clear language of the statute, there's no distinction in the statute that this is only for if you've failed to appear a defend. The Rule 37B refers to a default as a potential remedy, discovery sanction. That rule takes you back into the default rules. And if you just apply the plain statutory language of Rule 55, that's what the statute says. Relief from a default is a good cause standard. There's no — there's no rule that says that that does not apply when rule — when the default rules are invoked under Rule 37. That would be — you would have to create that law to say it doesn't apply if a party is defaulted as a sanction. And there's no reason to create that. The rules refer back and forth to each other. There is, in the first part of Rule 55, the entry of default — entry of default is where a party fails to appear or defend. But a default judgment may be reviewed under Rule 60, and that you have the, you know, just reason standard. I don't think the district court — maybe I'm wrong on timing, but when the district court in Documentary 409 was considering the motion for reconsideration, I'm not sure that the district court had entered default judgment yet. I think it did so at the end of that order. They, at that point, had made an order ordering the clerk to strike the answer. There's default as to liability, correct. But I don't think it — The non-default judgment, which I would say would put you back into tantamount to the entry of default because he had ordered the clerk to strike the pleadings. So under that, you would use the good cause standard. Because at that point, he had entered an order which would be similar to the entry of default as opposed to default judgment. So that would put you into the good cause standard. But why wouldn't we read Rule 55's use of the term entry of default in Section C as — meaning the same thing as entry of default in Section A, which is a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. Why wouldn't that be the only sort of default that's being referred to in Section C? Well, even if you say that it failed to defend, the point of the court ordering that the answers be stricken puts it back into you have failed to defend because now your answers have been struck — have been struck. And that's what the court ordered. They ordered the clerk to go in, and if you pull that record, it says these are struck. So that puts you back into 55A. 55A, you have not defended because your answer has been struck, and that's what he ordered. That's what we ask for relief from. That would put you into the good cause standard. Even if you wanted to say that it was more tantamount to the default had been — a default judgment had been entered, you would go to Rule 60, and you have the just reason, and we would submit, Your Honor, that there's no — nothing in that rule, in either 55 or 60, that allows the court to say, We're not going to hear this party's evidence that its own lawyer had not told it about this ADP subpoena issue. All right. I have let you go past your time. You still have seven minutes for rebuttal, so Mr. Rosenthal. Thank you, Your Honor. If it pleases the Court, my name is Ian Rosenthal, along with Fred Helmsing and other co-counsel. I represent William Hornady and 275 other men and women who are still waiting to be paid for overtime. They worked as far back as 2015. The default judgment in this case is absolutely due to be affirmed first and most simply because the National Hockey League case says that has to be the result. But so do a string of other cases, including Aztec Steel, Sunshine, your recent opinion in Consumer Protection v. Brown, and I would feel a little silly standing here reciting back to you quotes from what was just said in that case. But Judge Grant, you raised a good point at the outset of your questions. The National Hockey League case set out that even if you were to assume that after case-ending sanctions were entered, ending the case at the district court level, after an appeal, there was somehow a reversal and it went back to the district court that you would have a duly chastened litigant playing by the rules. National Hockey League says that assumption doesn't get you anywhere. You still can't reverse. And what we have here is the absolute opposite of a duly chastened litigant. You just heard extensive argument like extensive briefs that never mentioned a single thing OTK did from 2018 through the summer of 2020 before the words ADP and subpoena ever appeared in the same sentence anywhere in the record or anywhere in the case. Judge Beaverstock sets out in, you could say minute detail, you could say excruciating detail, you could say cringeworthy detail, everything that went on for two years, all of which when they say is not based on the files or the proceedings before the magistrate judge that then got transcribed. There were representations of counsel in briefs. There was deposition testimony in which their high-level witnesses said what information they had. I have actually a question. I hate to cut you off, but I want to make sure we get to everything. On the bonus claim, why do you think that, why do you think that the bonus claim violates 778.210? It seems to me that the act deals in work weeks, not work months. So explain to me why there's really a violation there. So first of all, we start with the statute section 207. And it says, and I'm obviously paraphrasing, but in substance every penny an employee gets is going to be counted into the regular rate. It has to be multiplied by at least 1.5 to get an overtime rate. And then it lists out, it's either seven or eight explicit statutory exceptions. It doesn't matter. I'm sorry. And also things like production incentives, commission bonuses that are paid later. So that has to be retroactively counted back in to the regular rate with recalculation of the average weekly wage. I guess my question is, why didn't that happen here? What's your argument about why that didn't happen here? It seems it was a percentage of each employee's wage, including overtime. So why isn't that consistent with the rules? It was a percentage of something. But as I believe the court in Berringer noted, any number is a percentage of some other number. To get to, I think, the thing that is intentionally confusing in my friend's counsel's brief, is this. What it has to be, if you're going to use a percentage, if you're going to fall within the narrow confines of 778.210, the period that you earn the bonus, so you've already got whatever you got paid for that time, then has to be the period of wages that the bonus is applied to. What OTK did, always had a different time period, which made it not random, but also not relevant. Because what it looked at was, you're getting paid every two for the two-week period ending four or five days earlier. You also get paid on January 15th. That A period is from December 27th to January 11th. You earn the bonus based on the work the whole mill does from January 1st to January 31st. In the middle of February, they say, congratulations, you guys are getting an 18% bonus. And then they look at how much was your paycheck on the two Fridays in January that you happened to receive money. Not how much money did you receive for pay from January 1st, sorry, for work. But does that mean that under the FLSA, it's always illegal to give a monthly bonus when people are paid on a two-week schedule? It doesn't seem to me that there would be a way to do it. Sure there is. This is, sorry, to answer your question. Of course, there's nothing illegal about paying the bonus. It's how do you treat the overtime and did you do it the right way? And what every single case that has addressed the issue has held, as well as every Department of Labor opinion letter, to the extent you would ever look at those, as well as even the regulation, is that when you have a mismatch between the period that the bonus is earned and the period the bonus is being paid, you have to go back and, well, I'm sorry, I answered that badly. You violate the FLSA. But the reason is you can pay a bonus of $1,000. It happens to be 6.3% or $5,000. It happens to be some other percent. When the bonus is paid, you have to reallocate, sorry, you have to recalculate the amount of overtime pay that should have been made earlier and make up for it. That's reflected in 778.209. The other opinion from this Court, I don't know whether to pronounce it Frexia or Frexa. It is cited in our brief. It's a commission case. The same sort of thing you're talking about in the sense that, of course, commissions are legal. You can calculate commissions due a month later, three months later. You have to go back when those commissions are paid and figure out, okay, how much overtime was due. I hope that responded to your question. The point I think I should also make, I do want to spend a couple minutes on the cross appeal because I really think it's all it takes. It's easy for me to stand up here and make a trial level impassioned argument about how all of this is about people getting paid for the work they did, and that's true. But this is also, at what we're here today, about the work that Judge Bieberstock and Judge Nelson had to do because of OTK's misconduct. Starting in 2018, from the very beginning, from the jump, they produced to us XL records that they said were their verified business records for the first 30 or so plaintiffs. It was only after we started trying to use them and therefore started seeking other XL data that it turned into some story about, we'll give you PDFs. We'll give you XLs that don't have the pay rates. All of that was in 2018, 2019, and 2020 in ever escalating problems before the magistrate judge, none of which involved ADP. It is, it got worse, frankly, in March of 2020 when we finally took depositions and tried to ask questions about these records and find out, oh, no, those records are wrong. We didn't give them to you in color. These are, but even then, witnesses would say, these are the business records we have. I'm going to stop you and take you back to a technical question. Do you, on a totally difference between a plenary standard of review and a good cause standard? Is there any daylight between those two? Let me phrase it to you the way that makes sense to me, and I hope it is responsive to your question. It seems to me, and you're talking about the second, the document 407, the final order on the motion to reconsider, I assume. I mean, even just as a general matter, right? I'm not even saying as applied to this case. I'm saying, are those two standards different as a matter of law? They're really, really close. I mean, you could make up fine hypotheticals. I think the same is true if you're looking at Rule 54B or Rule 60B, or the motion to reconsideration world. I'm not as sure about that one. Rule 60B, it seems to me, is a good bit higher than good cause. Tell me why you think they're the same. Excuse me. I mean, in the context that you already have an informed ruling, which is a little bit different from a clerk entering a default for failure to appear in Rule 55, when you already have an informed ruling, whether somebody is coming back and seeking reconsideration in reconsideration world, which a lot of times deals with, is there newly available evidence or not? But don't they, I mean, don't they have to be different because Rule 55C sets a standard of good cause for entry of default, and then the Rule 60B rule standards for a final default judgment, and Rule 60B has a range of different issues. If they're not, if those two aren't different, then why does the rule bother to set out a different standard for entry of default versus final default judgment? 55, 55C, excuse me, is starting with 55A. A party hasn't appeared. The clerk's entering a judgment. Then, that's not my question. My question is in 55C, for default, it says the standard is good cause to set that aside. And for a final default judgment, the court has to look to Rule 60B. If those two things are the same, then why would Rule 55C differentiate between them? If those two standards are the same, then why would Rule 55C differentiate between them? Because there's a difference between entry of default and entry of default judgment. Right. If the standard is the same that the court would apply in those two situations, then why does it matter to break them out? Well, 60B sets out one, two, three, six reasons. Right. The standard is a catch-all for any reason, which is really any extreme circumstance. Right. To be honest, I cannot give you a great answer, partially because I didn't draft the rules, but we are in... Wouldn't we, though, assume that whoever drafted the rules must have had in mind that there would be a different standard and try to figure out what the difference is? Sure, but I don't think it comes up in this case, because when you look at Judge Beaverstock's order, where he goes through at a granular level why there was not good cause, why every reason they offered didn't make any sense, and in particular, it says this, and this is from page 6843 of the court record, in describing their declarations, which was the only substance to their motion, quote, more importantly, these declarations do not provide any crucially important evidence, newly available or otherwise, to undermine the court's conclusion that defendant's failure to produce his time and pay records  That follows all he set out the first time, using a clear and convincing evidence standard to find intentional, willful, pervasive misconduct, and then all he did in the second order, which is 12 or 13 pages of granular level rejection of the arguments they made. So whether you look at that as he's expressly saying, there is no good cause for me to reconsider. Now your opponent, your friend on the other side is saying he didn't consider those, but what you were saying is he did consider those and he rejected them. Is that correct? Yes, Your Honor, I just quoted to you one of the places where he explicitly says he considered it and rejected it, and then the actual content of page after page after page of that order reflects express reconsideration and rejection of that position. Now I've got one other question for you on yet a different topic. When, I think you argue that because the answer was stricken, that means that the affirmative defense also had to go away. But when we're viewing a sanctions order for abuse of discretion, can't we understand why the judge, the district court, which is already giving, I think, a very severe, even of merited sanction, that the district court in its discretion couldn't say, well, as a technical matter, this affirmative defense was stricken, but as a kind of factual matter, it obviously would have applied. So when I impose this sanction, I'm going to credit the affirmative defense that really would have cut damages by X amount. It's an interesting question. Of course, that's not what the order said, and that was the rationale that was applied. What happened in real time, as you may recall, there was a hearing on the methodology for damages. Judge Biverstock took what were styled as objections. One of them, OTK said, well, there is a statute of limitations. And we said, of course there isn't. It's been struck. And then he sustained the objection, and so we submitted damages calculations in line with that limited period. But what he did not say was any version of what your honor just recited as a hypothetical, where you could attack that. Instead, what we're looking at is, what does the rule say? And maybe more importantly, how does it get applied? In this court's day case, you have an explanation of what ought to happen. We cited to the Richardson case, which was the only case I could find within this circuit, where that gets applied in an FLSA context. And the way it got applied, which I think makes perfect sense and strictly applies the rule, as opposed to any version of, wouldn't this be a better rule and wouldn't it make more sense? In Richardson is, excuse me, the allegations of the complaint, just like ours, covered longer than three years. There was no answer. There was a default. Therefore, there was no statute of limitations. And therefore, the damages that were awarded, exactly consistent with how we read Rule 12, were based on the factual allegations, which went back further. Just like if a party does not plead a statute of limitations defense in its answer. Suppose, suppose we agree with you. Suppose we agree that the district court, through inadvertence or whatever, made this erroneous calculation and we send it back. Couldn't the district court at that point say, I didn't put it in my order, but what I meant was just what Judge Grant said. And so I'm not, I am applying the statute of limitations. It's in my discretion as part of my sanctions. I'm striking the answer, but I'm keeping, this is just very obvious to me that there's a statute of limitations problem. So what you are describing, excuse me, would be the district court reconsidering the scope of the sanctions that were imposed. No, saying, saying I didn't put it in my order. I didn't explain it well enough, but here's what I meant. So, then we would be in the world where we would be raising our equitable tolling arguments that we did not have a chance to present at the trial court level. All they argued was there's a statute of limitations. And we said there can't be a statute of limitations. It just got struck, my parenthetical, for the third time in this case, because Magistrate Judge Nelson struck the statute of limitations defense twice. And the hypothetical that there is, what I would say is an invisible ruling that the trial court considered whether or not to apply the statute of limitations. And what he really meant was I'm striking all the defenses except for this one. And that's how it should be interpreted would, frankly, have made for our appeal to be a little bit different than it is today. Because then we'd be addressing that exactly. One last question, if Judge Branch doesn't mind. I combed through the record and couldn't find the damages breakdown between the overtime and bonus claims. Do you know how much each of those was worth? They overlapped. The core, not the core problem, the core reality is that the different violations, because all of the damages have to be calculated by the week, with each week being separate, the precedent for the statute, for the regulations. There isn't a way to break out the overtime, sorry, the bonus damages from what the hourly rate should have been, from how they miscalculated it by jumbling numbers together for different weeks and different amounts, from the rounding. We did it by the week. We put them all in together. It wasn't separated out. And, as opposed to close, unless you have additional questions, obviously, there is the part where under Rule 12, we are talking about plausible entitlement based on the factual allegations. And what we pled as a bonus claim mimics not just the statute, not just what 778.210 does not cover, but every case that has addressed it. None of which were 11th Circuit Court of Appeals cases, but there are a string of them from around the country. They date back to the Siamkin, which I'm probably mispronouncing, opinion from 1945 that lays out why you can't just say, well, this is a percentage of something else and it works out. There are systemic considerations at the heart of the FLSA, not just about how much do people get paid, how much they deserve to get paid, but about competitive balance, making sure people are... So, explain to me this. How could a company, I'm not saying OTK, make it any company, how could a company that bases its bonus on monthly figures lawfully pay that bonus in two-week increments? Maybe it's obvious and I just don't know, but I'm sincerely asking how that's possible. Here's how they would do it legally. It is not in two-week increments. But let me answer your question about how it would work. And incidentally, it's what they've started doing now as of three months ago. When you announce the bonus a month later, and I'm going to try to make math as easy for myself as I can, you've got people who worked, let's say, 50 hours in week one that happens to fall within a month, 50 hours in week three, and those are the two periods of overtime. Over the course of the month from January 1st to January 31st, they worked 197 hours. Because you've also got these other weeks and partial weeks. The company says, great, congratulations. We've calculated the bonus. It's $1,970. And we're going to pay it to you at the end of February, which is what OTK does. They pay the bonus at the end of the next month. You can take $1,970. You can divide it by 197 hours, which I intentionally picked as the number of hours worked. You get $10 an hour. That's supposed to be, under the statute, under the regulation, counted back in. Now everybody's base rate is $10 an hour higher, and they were supposed to get paid overtime at $15 an hour. So regardless of how the weekly pay is paid, you would say if there are, the company knows that if there are three days at the end of the week that were in February, right, but the paycheck is for the full week, then the company can easily later figure out and pay you the 10% bonus based on those three days and then pay the bonus based on the next however many days just as a separate item. Is that right? Yes, I'll give you two weeks and partial weeks, which is exactly what 778.209 describes when you're counting money back into the average weekly wage for the regular week. It's also exactly what FREXA described for commissions, which are the same way. And this is the very last question. Why would it disadvantage your clients to get paid for two weeks and then sometimes three weeks as opposed to an exact bonus? Because wouldn't a bonus for five weeks end up being more than a bonus for a month? Well, in practice, on any given person, on any given month, sometimes it might be more, sometimes it might be less. It's just different. The point, I think, well, the point of the statute is to be as clear and easy to follow as possible. The point of the regulations is to say if you did it exactly this way in 778.210, you don't have to go through all these hoops because the math will be exactly right as illustrated in the Seampkin case, the Brock case. You make the math work perfectly. If you can't be bothered to do it the right way so the math is easy, then you're back into you chose to do something different. You chose to do something more complicated. There are lots of ways under the FLSA that you could say you're paying somebody fairly. I mean, anybody, whether it's the Helix case that went to the Supreme Court, gee, isn't $120,000 a lot of money to pay somebody who works on an oil rig? Sure. That doesn't mean they don't get overtime because the statute says so. Sure. Isn't this bonus something that you could, in a start-from-scratch statutory world, say, yeah, good enough. But it's not the statute we have. It's not the statute that companies in America have operated under for 70 or 80 years. And the benefit of operating under a statute that has been often looked at by courts is that you know we're playing by the rules. It is not some catch-all equitable situation. And imagine, I'm a sometimes defense lawyer and I was a former serious defense lawyer. Imagine what it would be like in the corporate world if they found out that the Department of Labor could enforce the FLSA just based on whether or not they thought it was fair. The service that would happen from there. I suspect I have, I know I'm beyond my time. But I do appreciate your questions, especially since I think you all probably have a holiday weekend planned. Thank you. Thank you. Thank you. And Ms. Gatlin, you have seven minutes. Your Honor, as Judge Grant's questions point out, there is nothing wrong with the bonus. It is calculated as a percentage of the total earnings on the month that the bonus is earned. And that is, there are strings of citations in our brief where that has been affirmed over and over again. The regulation respectfully does not say what he says it says. It says that so long as the bonus is not calculated to avoid overtime. And here, as you point out, there's no detriment here. Judge Grant asked, you know, how can you segregate how much of this is bonus and work week? Like the bonus, the work week claim is not valid. The FLSA clearly does not require an employer to start his work week at midnight. There are strings of cites on that as well. Both of those claims are invalid as a matter of law and should be reviewed de novo. Isn't part of the problem, though, that your client didn't give the court the information it needed to do that legal analysis and now there's a sanction that penalizes them for not participating in the litigation process as they should have? That's what we're saying right now and that's why we're here today. And let me address the problem with the claims and then I'm going to answer that question. Okay, $11.1 million of this judgment is for the bonus and work week. Those are invalid claims. As we've tried one of these cases since then, they found zero FLSA liability, even on the rounding claim. But if you assume that a rounding claim is going to be one that's, you know, typically hard to, you know, going to require a trial, that would be only $2 million of this verdict. The other $11.1 million, if reviewed de novo under the FLSA as to whether those claims were valid to begin with, they are not. What's the $2 million? What are you referring to there? The rounding claim. Okay, all right. And then as to whether or not we're just stuck with this because we got defaulted, I have a couple of things to say about that. First of all, even if there were going to be a default, it should only be for the well pleaded facts of the complaint, not erroneous legal theories taken as true. And we've cited case law on that in our brief and the law is clear that even though if you're going to default someone, that still doesn't mean that they get the benefit of legal argument and especially legal claims that are not based in the law. And so we would ask that those legal claims, the bonus and the work week, be reviewed de novo by this court and that this incredible windfall of at least $11 million be reversed. It's inappropriate. It's overkill. And what's really important is it sets bad FLSA precedent that you will have other people coming along challenging on similar ground, assuming this to be the law, that a work week has to start at midnight, that the bonus has to be recalculated if you pay every two weeks. Not one of the cases... If these were so legally insufficient, then why wouldn't your client have just straight up defended the case? Okay. So now let me get to that was your first question. Why didn't they defend the case? Your Honor, I would ask you to take a look at the Chattisuma case that came in as a sanction and went out as the court finding that there had been an incredible abuse of discovery that led to the problem. I think this case is very much like that, frankly. If you will look in the record at document 318, the littler lawyer that replaced the lawyer who was removed came and explained to the court that from an FLSA standpoint, all of the pay records were produced. They had the wage and hour statements of every employee. As Judge Grant pointed out, it's a sophisticated company. If you read that 96-page order, it reads like they didn't have pay records. They had the same ADP pay records that everybody in this country that uses the most prominent program for calculating this had, but they are in PDF format. And in the record, you will see that the ADP representative testified that their program converts it to PDF format so that the employer cannot tamper with it after the work week is completed. So you will see in there, and you have to take a very close look at this record. And I'm going to tell you, I'm going to tell you that under the court's precedent in Emmerich and in Chattisuma, where there is a default of a defendant, the required standard of review is scrupulous review. That's for the default of a defendant. Both of those cases say that. And this case is going to require a very scrupulous review because somebody has to get into the facts of what really happened and what this all really comes down to is that my friend here was able to convince the court that he was entitled to these records in Excel format, even when they're not the native format, they're not a format any other employer has, because as an intentional matter, ADP has the system store it on the employer side in PDF so they can't be tampered with. So... The two questions on that, I mean, didn't in the very beginning of the case, didn't the district court point out that initially there was a notation about just producing the records in Excel and then that was deleted? So you all agreed to produce it via PDF, but then also where did those Excel spreadsheets that were originally produced, that turned out to be incorrect, where did those come from? Okay. So initially, and that is in the order, I can't give you the page, but I know exactly, I think it's like 36 or 37 that you're talking about. The lawyer for OTK, when they were doing the stipulated order, counsel had proposed that it be in Excel and he came back with a red line and said, these are kept in PDF. That would be very hard for us to get them in Excel because that's not how they're kept. I wasn't the lawyer. I don't know how, they clearly objected to it, but it winds up in the order. But it says, if reasonably possible, they'll be produced in Excel. When did OTK say it wasn't possible? Because it seems like from the record, they kept saying, we can do it. We need help from ADP and it's just a mess. Yeah. So what happened initially is initially, if you will look and it's cited, there's a quote cited in our brief from one of the plaintiff's motions to compel right before the first settlement conference, which was in December, I believe of 2019. And he says there, obviously, we don't need records for everyone prior to the settlement conference. We're going to do 31 representative plaintiffs. So all the way up to the settlement conference, they were going along the lines of doing representative discovery up to that point. So for the 31, what the company did was they took the PDFs and they created Excels that they made them in order to try to comply with the order. But the information that they have is the base rate of pay of each of these employees. Okay. So the rate of pay that was put in the Excel when they created them was the base rate of pay. And occasionally, and this is a huge issue in this case of these step-up rates, but occasionally, apparently 72 times over the course of this, with 200 and something plaintiffs, an employee will work for another employee. If they do that, they get the rate of the other employee. If it's more, if it's less, they get their rate if it's higher. Okay. But so that what they came in and said, these are wrong because they did not include the step-up rates. The step-up rates were calculated in by ADP. And so the payroll lady, Ms. Pledger, who one of the most important fortunate things about this order has been terribly maligned. It's so unfair to her. But she inserted the base rates of pay, which is what they have. And the only way to get those step-up rates in an Excel format would be to have ADP go back in and reopen the pay weeks because they close once the payroll is finalized. And OTK can no longer get that in Excel format. So at the time that they tried to comply, the payroll lady used the payroll rates, the base rates of pay. And then there was a complaint about that because it did not include the step-up rates. And that is when they realized that they could not, they didn't have the ability to give them those rates in Excel. I've got, I would like to ask you the same question I asked your friend on the other side, which is, do you think there's a difference between plenary review and a good cause standard? Okay, the good cause standard is a very liberal standard. But, you know, I mean, it's mutable to the situation. And I would think, you know, both are very liberal. Okay, so maybe there's a difference, but it's hard to say what it is in the abstract. And do you think there's a difference between the good cause standard and the Rule 60B factors? I think that Rule, the good cause standard is a little more liberal than all of the 60B. But I don't think either one of those standards would prohibit, would limit the judge to only looking at new evidence. And that's what he did. So either one of those. Um, but, you know, one of the things I would like to point out to this Court is, take a look at Emmerich and Cousin. They specifically reference the situation where a defendant is, defendant's pleadings are struck and they're defaulted. And they call for this scrupulous review. And, you know, there's this, there's this distinction to be made in the case of a default. You know, the Court's prior, you know, recent. I do think we're starting to cycle back on things we've already talked about. And I've let you exceed your time again. I've let everybody exceed their time. This is a complicated case. And we had questions. But I think it's time to, if you have a final sentence, wrap this up. And I have, I actually do have one final question. No, no, no, not at all. I think that was, I think it is good to wrap it up. But is the Posting Counsel correct that your company now pays its bonuses in the manner that he describes as compliant with FLSA? Your Honor, as a result of this litigation, they have sought out a different payroll processor. ADP has no, the largest payroll processor in the country could not do it the way he wanted it. And they have worked, reworked their bonus. I couldn't give you the details of it. I can't say if he's right or wrong about that. Okay, thank you. Your Honor, if I might just conclude on two issues. The fact that they tried and could not create those excels puts this case into C-Right. Where they were unable to comply with the order and it would be inappropriate under C-Right to sanction them for something that they could not comply with. And the final thing that I would like to say, Your Honor, is this presents a unique case of would a lesser sanction suffice. In this case, it took nine months for this order to come out. As soon as the prior counsel was replaced, ADP, we were able to get the Excel records from ADP and they were produced in April. This order did not come out until November. So you have a unique case of where you can say not would lesser sanctions have sufficed. By the time the order was entered, lesser sanctions had already sufficed. Thank you. Thank you all. We have your case under advisement and court is adjourned. Thank you.